```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
   JEAN CLAUDE DELVILLE,                                    :
                              Plaintiff,                    :
                                                            :    08 Civ. 10891 (JPO)
                    -v-                                     :
                                                            :    OPINION AND ORDER
   FIRMENICH INCORPORATED,                                  :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

This case was tried before a jury from November 5 through November 13, 2013. On November 14, the jury returned a verdict in favor of Plaintiff Jean Claude Delville and Defendant Firmenich Incorporated ("Firmenich") on their respective breach of contract claims, and against Delville on his age discrimination and retaliation claims. Delville has moved to amend the judgment to add prejudgment interest. Firmenich has cross-moved to vacate Delville's breach of contract judgment. For the reasons that follow, Delville's motion to amend is granted and Firmenich's motion to vacate is denied. Delville is awarded prejudgment interest in the amount of $54,631.55.

## I.     Background

Familiarity with the background of the case is presumed. The Court discusses only those aspects that are relevant to the instant motions.

Delville is a renowned perfumer who worked for Firmenich, a prominent international manufacturer of perfumes and flavors, from April 1, 2000 to July 2, 2007. Under his initial employment agreement (the "2000 Agreement"), Delville was entitled to a base salary of $425,000, a yearly contribution in a CAP Plan of $50,000, and the opportunity to earn up to an additional $150,000 annually under Firmenich's Incentive Compensation Plan ("ICP"), which

rewarded perfumers with bonuses based upon the adoption values of their perfumes, namely, the value resulting from a client's selection of a perfumer's creation for manufacturing, marketing, and sale.  The agreement also contained a provision requiring Delville to "regard and preserve as confidential: (i) all trade secrets and/or other proprietary and/or confidential information belonging to Firmenich," and prohibiting him from using any confidential information for the benefit or purposes of any person or entity other than Firmenich.  (Dkt. No. 30, Ex. 10 at 7.)  Finally, the agreement contained a "merger clause" providing: "This Agreement contains the entire agreement between [the parties] with respect to the transaction contemplated herein and supersedes all previous" agreements, and its "terms shall not be altered or otherwise amended except pursuant to an instrument in writing signed by each of the parties hereto and making specific reference to this agreement."  (*Id.* at 9-10.)

On April 5, 2000, the parties executed the Employee's Secrecy Agreement (the "Secrecy Agreement"), which provided in relevant part:

> [Delville] agrees during [his] employment and subsequent thereto
> to treat as secret and confidential and not to disclose, directly or
> indirectly, or to make use of any and all technical information,
> formulae, processes, customer lists, supplier lists, purchase or sales
> data, or any other information respecting research, development
> and discoveries disclosed to [Delville] or obtained by [him] during
> [his] employment.

(Dkt. No. 30, Ex. 11.)  The agreement further provided that Delville must "keep accurate and complete laboratory and research notes," and "[a]ll such notes and note books therefor shall be and remain the property of [Firmenich] to be surrendered at [Firmenich's] demand."  (*Id.*)

In March 2007, Firmenich informed Delville that it did not intend to renew his employment agreement.  On April 1, 2007, Firmenich offered Delville a new employment agreement proposing a four-day work week at 80% pay (the "2007 Agreement" or "Employment Agreement").  Delville reluctantly accepted the offer in May 2007, but in June 2007 began

discussing the possibility of employment with Symrise, A.G. ("Symrise"). On June 27, 2007, Symrise made Delville an offer of employment, and Delville sent a letter to his boss, Jerry Vittoria, and other executives suggesting that his age was a factor in Firmenich's decision to cut his hours. On July 2, 2007, Delville submitted his letter of resignation. He was 58 years old.

Delville commenced this action alleging age discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.*, as well as breach of contract with respect to the CAP Plan and the ICP for failure to make timely payments. Firmenich asserted counterclaims for breach of contract (with respect to the Secrecy Agreement), breach of fiduciary duties, breach of the duty of loyalty, unfair competition, misappropriation of company property, and unjust enrichment.[1] The basis for Firmenich's counterclaims was its allegation that, shortly before leaving the company, Delville destroyed and discarded perfume samples and removed his paper files containing perfume formulas from his office.

The parties subsequently moved for summary judgment. On January 31, 2013, the Court granted Delville's motion with respect to all of Firmenich's counterclaims except breach of contract; denied his motion with respect to his breach of contract claim; and denied Firmenich's motion with respect to all of Delville's claims. *Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446 (S.D.N.Y. 2013). Trial commenced on November 5, 2013. On November 14, the jury returned a verdict in favor of Delville in the amount of $98,691.00 for breach of the ICP, and in favor of Firmenich in the amount of $1.00 for breach of the Secrecy Agreement. (Dkt. No. 122.) The

---

[1] Delville later withdrew his breach of contract claim as to the CAP Plan, and Firmenich withdrew its unjust enrichment claim.

jury found in favor of Firmenich on Delville's age discrimination and retaliation claims. (Dkt. No. 107.) Delville moved to amend the judgment to add prejudgment interest on December 16, 2013. (Dkt. No. 129.) Firmenich cross-moved to vacate Delville's breach of contract judgment on January 27, 2014. (Dkt. No. 140.)

## II.     Motion to Vacate Judgment

"On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for . . . : (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). Rule 60(b) is a "mechanism for extraordinary judicial relief available only if the moving party demonstrates exceptional circumstances." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009) (citation omitted). In this Circuit, such relief is generally disfavored and is warranted only if (i) there is "highly convincing" evidence in support of the motion, (ii) the movant shows good cause for failing to act sooner, and (iii) the movant shows that granting the motion will not impose an undue hardship on any party. *Rivera v. Fed. Bureau of Prisons*, No. 08 Civ. 5590 (SAS), 2013 WL 5052153, *1 (S.D.N.Y. Sept. 12, 2013) (citations omitted).

Firmenich contends that Delville's breach of contract judgment should be vacated because it is the product of mistake. The purported mistake is that "the jury instruction was flawed, which caused a flawed and inconsistent verdict."[2] (Dkt. No. 147 at 3.) With respect to Delville's breach of contract claim, the Court instructed the jury:

---

[2] Firmenich is somewhat unclear about whether it is challenging just the jury instruction, or also the verdict. (*Compare* Dkt. No. 141 at 2 ("The mistake was that the jury awarded Plaintiff damages for breach of contract, but inconsistently found Plaintiff had engaged in serious misconduct that forfeited his right to that very relief."); *id.* at 3 ("Whether it was the fault of the instructions or some other factor, the fact is that the jury ruled inconsistently and contrary to law that Plaintiff was entitled to damage[s] from Firmenich for a breach of contract even though it also found Plaintiff had destroyed property and stole formulas."), *with* Dkt. No. 147 at 3 ("The reason to vacate is because the jury instruction was flawed, which caused a flawed and

4

> To prevail on his breach of contract claim, Mr. Delville must prove by a preponderance of the evidence that (i) there is a valid contract; (ii) Firmenich's performance of its obligations under the contract was defective; and (iii) it resulted in damages to Mr. Delville.

(Dkt. No. 140 ("Reilly Aff."), Ex. A at 1038:22–1039:1.) This instruction was derived from Delville's proposed instructions and was consistent with the Court's statement of the law in its summary judgment order. (Dkt. No. 69 at 30); *Delville*, 920 F. Supp. 2d at 467 (citation omitted). In contrast, the Court's instruction on Firmenich's breach of contract claim included a fourth element: that Firmenich, the claimant, must have performed its obligations under the contract. (Reilly Aff., Ex. B at 27.) Firmenich argues that the instruction on Delville's breach of contract claim also should have included this fourth element, and as a result of the mistaken instruction, the jury rendered a mistaken verdict.

### A.   Jury Instruction

Rule 51 requires a party to make any objections to jury instructions before they are delivered to the jury, on the record, stating distinctly the matter objected to and the grounds for objection. Fed. R. Civ. P. 51(b)(2), (c)(1). Compliance with this rule is crucial because it "give[s] district courts the opportunity to amend erroneous jury instructions, thereby avoiding the need for further review and potential retrial." *Chestnut v. Hall*, 284 F.3d 816, 819 (7th Cir. 2002) (citation omitted). If a party fails to object in a timely manner, the instructions are reviewed for plain error. Fed. R. Civ. P. 51(d)(2).

---

inconsistent verdict. Contrary to Plaintiff's suggestion, Firmenich is not arguing that the result is the reason to vacate (although it disagrees with the result) – it is arguing that the cause of the verdict is the reason to vacate.) The jury's verdict respecting Plaintiff's bonus contract claim was arguably consistent with the instructions – the problem was that the instructions were flawed."). Given Firmenich's lack of clarity over the basis for its motion, the Court follows Delville's lead and assumes that the motion rests upon two alternative grounds.

Here, Firmenich had ample opportunity to object to the instruction on Delville's breach of contract claim but did not do so. During the charging conference, the parties disputed whether Delville had been overpaid bonuses under the ICP. When the Court asked if there were any other issues with the instruction, counsel for Firmenich responded: "We have no other comments until the revised version." (Dkt. No. 118 at 901:21–902:23.) The Court has not located, and Firmenich has not identified, any point during the conference at which Firmenich objected to the instruction on any other basis. Similarly, after the jury rendered its verdict, the Court held a sidebar:

> The Court: The only reason I wanted to talk to you at side bar is to confirm that there is no reason not to discharge the jury at this point, in other words, there are no issues as to which we need sort of further special interrogatories or clarification.
>
> . . .
>
> [Firmenich]: No, your Honor.

(Dkt. No. 146, Ex. A at 1077:4-10.) Firmenich now objects for the first time, months after the entry of judgment, without offering any justification for its untimeliness. Because it has not even proposed, much less demonstrated, good cause for failing to act sooner, relief under Rule 60(b) is unwarranted. *See, e.g.*, *Galin v. Goldfischer*, No. 03 Civ. 9019 (RJS), 2008 WL 5484318, *14 (S.D.N.Y. Dec. 31, 2008) (denying relief under Rule 60 based upon purportedly erroneous jury instructions where movant "ha[d] not offered any explanation for either his failure to raise an objection prior to the time when the jury began its deliberations or the three-week delay between the jury's verdict and his motion"); *cf. Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 2012 WL 638731, *10-11 (N.D. Ill. Feb. 23, 2012) (declining to grant new trial under Rule 59 based upon allegedly improper jury instructions because movant failed to timely object as required under Rule 51(c)).

Firmenich also has not provided "highly convincing" evidence in support of its motion. Since it did not make a timely objection to the jury instruction, it must demonstrate that the error was plain, *i.e.*, that it affected substantial rights. Fed. R. Civ. P. 51(d)(2). Plain error in the context of jury instructions is assessed by considering "the obviousness of the mistake," "[t]he importance of the error," "[t]he costs of correcting an error," and "the impact a verdict may have on nonparties." Fed. R. Civ. P. 51, Adv. Comm. Notes to 2003 Amendments. These factors do not support a finding of plain error.

First, "it can hardly be said that the alleged error was 'obvious'" when Firmenich failed to object to the instruction until more than two months after the verdict. *Galin*, 2008 WL 5484318, *13. Indeed, because the Court relied upon the three-element legal standard in its January 31, 2013 summary judgment order, Firmenich had notice that it might be used for more than a year. *See Delville*, 920 F. Supp. 2d at 467 (citation omitted). Even now, the purported error is not obvious. Firmenich cites case law indicating that the fourth element is required under either New York or New Jersey law, *see, e.g.*, *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002) (citations omitted); *Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc.*, 10 F. Supp. 2d 334, 344 (S.D.N.Y. 1998), but the Court's order relied upon a recent New Jersey federal district court decision, which in turn relied upon a New Jersey state court decision that remains good law, *see Delville*, 920 F. Supp. 2d at 467 (citing *G&S Livingston Realty, Inc. v. CVS Pharmacy, Inc.*, 2011 WL 6756948, *3 (D.N.J. Dec. 21, 2011) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. App. Div. 1985)), *rev'd on other grounds*, 506 Fed. App'x 182 (3d Cir. 2012). And while Firmenich included the fourth element in its proposed instruction for *Delville's* breach of contract claim, it failed to include the fourth element in its instruction for *its own* claim. (Dkt. No. 66 at 27-28.) Under such circumstances, Firmenich has not presented highly convincing

evidence that the error was obvious. The second factor—the importance of the error—turns upon whether inclusion of the fourth element would have led to a different outcome. But, as discussed below, the jury's verdicts are consistent. Consequently, Firmenich has not provided highly convincing evidence of the error's importance. Finally, the costs of correcting the error would be substantial if Delville (predictably) sought a new trial.[3] Even if he did not, he would be deprived of a substantial monetary judgment. Accordingly, Firmenich has not presented highly convincing evidence in support of its Rule 60(b) motion, *i.e.*, of plain error under Rule 51, and relief on this basis is denied.

### B. The Verdict

Firmenich also argues that Delville's breach of contract judgment is the product of mistake because it is inconsistent with Firmenich's breach of contract judgment. In returning a verdict for Firmenich, the jury found that Delville breached the Secrecy Agreement based upon Firmenich's theory that he destroyed company property and stole formulas. This finding is inconsistent, Firmenich asserts, with a finding that Delville performed his obligations under the Employment Agreement—which is the basis of his rights under the ICP. And because performance of his obligations under the Employment Agreement was an element of Delville's breach of contract claim, the verdict in his favor was a mistake.

As an initial matter, this objection is also untimely. Firmenich was required to object to any purported inconsistency in the jury's verdict prior to the excusing of the jury. *See, e.g.*, *In re Reserve Fund Sec. & Derivative Litig.*, No. 09 Md. 2011 (PGG), 2013 WL 5432334, *6 (S.D.N.Y. Sept. 30, 2013) (collecting cases). This rule, like Rule 51, is intended to prevent

---

[3] It does not appear that the verdict affects nonparties. The fourth factor may therefore support Firmenich. However, within the context of a Rule 60(b) motion, the import of the factor is unclear, and in light of the other factors, it is inconsequential.

precisely what Firmenich seeks: the reopening of judgments, the need for further review, and the potential for retrial. *See id.* ("The reason why objections to inconsistent verdicts are required before a jury is dismissed is, of course, so that the court has available to it the option of re-submitting the questions to the jury after some further instruction."). Firmenich also again fails to offer any justification for its tardiness. Under these circumstances, it has not demonstrated good cause for not acting sooner, and relief under Rule 60(b) is unwarranted. *See, e.g.*, *Dagen v. CFC Grp. Holdings Ltd.*, No. 00 Civ. 5682 (CBM), 2004 WL 830057, *3-5 (S.D.N.Y. Apr. 13, 2004) (denying Rule 60(b) motion based upon purportedly inconsistent verdicts because movant waived argument by failing to timely object); *Laborde v. City of New York*, No. 93 Civ. 6923 (JGK), 1999 WL 38253, *8 (S.D.N.Y. Jan. 27, 1999) ("An objection to inconsistent verdicts raised for the first time in a post-trial motion is untimely and procedurally barred.") (citations omitted).

Regardless, Firmenich has not presented highly convincing evidence in favor of its motion. There is a strong presumption that verdicts are consistent. "Before a court may set aside a special verdict as inconsistent and remand the case for a new trial, it must make every attempt 'to reconcile the jury's finding, by exegesis if necessary.'" *Turley v. Police Dep't of City of New York*, 167 F.3d 757, 760 (2d Cir. 1999) (quoting *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119 (1963)). "This role derives from the Seventh Amendment's obligation on courts not to recast factual findings of the jury and is based on the notion that juries are not bound by what seems inescapable logic to judges." *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) (citations and quotations omitted).

Here, it is plausible to read the verdicts consistently because the Employment Agreement and Secrecy Agreement are distinct contracts that entail distinct obligations. Indeed, the Court allowed Firmenich's breach of contract claim to proceed to trial for precisely this reason. On

9

summary judgment, Delville argued that the Secrecy Agreement was void and therefore not a "contract" because it sought to alter the terms of the Employment Agreement but did not comply with the latter's "make specific reference" provision. The Court denied summary judgment on the rationale that, although the Employment Agreement and Secrecy Agreement both addressed the treatment of confidential information, the latter "enumerate[d] *additional, more specific duties* by which Delville promised to be bound," and thus did not affect the terms of the former. *Delville*, 920 F. Supp. 2d at 468. The jury was likewise entitled to conclude that the two contracts were not intertwined. "Whether the parties intended to treat both agreements as mutually dependent contracts, the breach of one undoing the obligations under the other, is a question of fact," and it was entirely reasonable for the jury to conclude that Delville performed his obligations under the Employment Agreement but breached his obligations under the Secrecy Agreement.[4] *Rudman v. Cowles Comm'ns, Inc.*, 30 N.Y.2d 1, 13 (1972).

Nor does the jury's finding that Delville breached the Secrecy Agreement mean that he forfeited his right to compensation under the Employment Agreement. The cases cited by Firmenich all address an employee's ability to recover compensation after he has violated the duty of loyalty. *Feiger v. Iral Jewelry*, 41 N.Y.2d 928, 928 (1977) ("One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary.") (citing Restatement (2nd) of Agency § 469); *William Floyd Union Free Sch. Dist. v. Wright*, 61 A.D.3d 856, 859 (2d

---

[4] Even if Firmenich were correct that the contracts are interrelated, there would still be a question of fact whether Delville's breach of the Secrecy Agreement constituted a material breach of the Employment Agreement, such that he could not be said to have performed under the contract. The jury could reasonably have concluded that by stealing and destroying company property, Delville materially breached the Secrecy Agreement, yet did not materially breach the confidentiality provisions of the Employment Agreement, which could reasonably be interpreted as primarily focusing upon the use of company property for the benefit of oneself or a third party.

Dep't 2009) ("[W]here . . . defendants engaged in repeated acts of disloyalty, complete and permanent forfeiture of compensation, deferred or otherwise, is warranted under the faithless servant doctrine.") (citing *Feiger* and others); *Zakresky v. Graduate Sch. of Figurative Art of the N.Y. Academy of Arts*, 24 Misc.3d 1245(A), *7 (N.Y. Sup. Ct. 2009) (finding plaintiff was not entitled to compensation where his acts "were faithless, as a matter of law, and [] the extent of the faithless acts warrants forfeiture of the remainder of the salary which plaintiff seeks to recover") (citing *Feiger*). These cases are unavailing because they rest upon a factual finding that the agent was disloyal and his disloyalty was substantial enough to warrant forfeiture. The jury was never presented with such a question because the Court had *already* dismissed Firmenich's duty of loyalty claim on summary judgment for lack of evidence. *Delville*, 920 F. Supp. 2d at 469-70 ("Defendant, however, has presented no evidence that Firmenich's confidential or proprietary information was used by Delville to benefit his subsequent employers. Thus, Defendant's duty of loyalty claim fails as a matter of law."). Firmenich cannot now relitigate that claim by attacking Delville's breach of contract judgment on the ground that he breached his duty of loyalty.[5]

### III.     Motion to Alter or Amend Judgment

Delville seeks prejudgment interest in the amount of $54,631.55.[6] Because he prevailed only on a supplemental state law claim, state law governs the determination of prejudgment interest. *See Thomas v. iStar Fin., Inc.*, 629 F.3d 276, 280 (2d Cir. 2010). Delville contends that

---

[5] Because Firmenich's objections can be considered under the more specific Rule 60(b)(1), its motion under Rule 60(b)(6) is denied. *Breslow v. Schlesinger*, 284 F.R.D. 78, 83 (E.D.N.Y. 2012) (citation omitted).

[6] A motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) is the appropriate procedural mechanism for seeking prejudgment interest. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989).

New York law governs, while Firmenich argues that New Jersey law does. Under the former, the award of prejudgment interest is non-discretionary and the interest rate is 9% per year. N.Y. C.P.L.R. §§ 5001(a), 5004. Under the latter, the award of interest is discretionary and the interest rate, which is adjusted yearly to reflect the market, is substantially lower. N.J. Rule 4:42-11; *Gleason v. Norwest Mortg., Inc.*, 253 Fed. App'x 198, 204 (3d Cir. 2007) (citing *County of Essex v. First Union Nat'l Bank*, 891 A.2d 600, 608 (N.J. 2006)). There is therefore a conflict of laws.

To determine what law governs a supplemental state law claim, federal courts apply the choice-of-law rules of the forum state. *See Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP*, 623 F. Supp. 2d 504, 509 (S.D.N.Y. 2009). Under New York law, where a contract contains an express choice-of-law provision, "[a]bsent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) (citation omitted). In the absence of a choice-of-law provision, courts conduct a "grouping of contacts analysis to determine the jurisdiction that has the most significant relationship to the transaction and parties." *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 336 (S.D.N.Y. 2006) (citation and quotations omitted) (alterations accepted).

The parties dispute whether the ICP is subject to a choice-of-law provision. While it is clear that the ICP itself does not contain a choice-of-law provision, Firmenich contends that the New Jersey choice-of-law provision in the 2000 Agreement governs because that agreement provided Delville with the right to participate in the ICP. *See Smith v. Railworks Corp.*, No. 10 Civ. 3980 (JPO), 2012 WL 752048, *14 (S.D.N.Y. Mar. 6, 2012) (noting that because the "bonus plan was a corporate program, not an agreement between Plaintiff and Defendants[,] [t]he

12

relevant agreement between Plaintiff and his employer . . . is the 2007 [employment] Agreement"). Delville counters that the 2000 Agreement is irrelevant because it was superseded by the 2007 Agreement. The Court agrees. Both the 2007 Agreement and Vittoria's March 31, 2007 email to Delville indicated that the prior agreement was no longer in effect. (Dkt. No. 131 ("Clark Decl."), Ex. A 167:2-14 (testimony of Delville regarding email stating that Vittoria "said that my old contract won't be renewed and it was obsolete"); *id.* Ex. D (email in which Vittoria stated the 2000 Agreement had "expired"); *id.* Ex. E at P011 ("Based on your conversations with Jerry Vittoria, and his subsequent e-mail to you of March 31, 2007, I would like to confirm that we will not renew your Employment Agreement, dated April 1, 2000. Rather, we would like to offer you employment based on the below terms and conditions.").); *see also Smith*, 2012 WL 752048, \*2-16 (concluding that where prior employment agreement with choice-of-law provision was superseded by agreement without such a provision, grouping of contacts analysis was appropriate). In awarding damages to Delville, the jury relied upon fragrances adopted between April and June 2007, when the 2007 Agreement was in effect. (Clark Decl., Ex. J.) Thus, the relevant agreement is the 2007 Agreement, which does not contain a choice-of-law provision, and the Court must conduct a choice-of-law analysis.[7]

In conducting a grouping of contacts analysis, the court must consider "the place of contracting, the places of negotiation and performance, and the domicile or [place of] business of the contracting parties." *Safeco Ins. Co. of Am. v. Discover Prop. & Cas. Ins. Co.*, No. 05 Civ. 8625 (DC), 2009 WL 436329, \*4 (S.D.N.Y. Feb. 23, 2009) (citations and quotations omitted).

---

[7] Firmenich suggests that the 2000 Agreement governs because it is the agreement that provided Delville with the opportunity to participate in the ICP. But the 2007 Agreement does, too. (Clark Decl., Ex. E at P011-002 ("You will *continue* to be entitled to earn an incentive award . . . .") (emphasis added).) That it was necessary to indicate the continuation of this right in the 2007 Agreement is further indication that the 2007 Agreement superseded the previous agreement in its entirety.

Delville asserts that New York law governs because he is a New York resident and was in 2007; the 2007 Agreement was negotiated by both parties and executed by Delville in New York; at the time of Firmenich's breach, the ICP only applied to North American fine fragrance performers, and Firmenich's fine fragrance business is located in New York; Delville worked and received compensation in New York; and the breach occurred in New York, where Delville should have received payment. Firmenich does not dispute this contention, but instead argues that Delville should be precluded from arguing that New York law applies because his proposed jury instruction described the claim as "NJ Breach of Contract" and cited New Jersey case law, and because the Court stated that the contract was governed by New Jersey law in its summary judgment order. (Dkt No. 69 at 30); *Delville*, 920 F. Supp. 2d at 467 (citation omitted).

Firmenich's argument relies upon two doctrines: law of the case and judicial estoppel. The law-of-the-case doctrine "holds that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise. *United States v. Quintieri*, 306 F.3d 1217, 1225 (citations and quotations omitted). "The doctrine of judicial or equitable estoppel 'forbids a litigant to repudiate a legal [or factual] position on which it has prevailed." *Motrade v. Rizkozaan, Inc.*, No. 95 Civ. 6545 (DC), 1998 WL 108013, *6 (S.D.N.Y. Mar. 11, 1998) (quoting *Cont. Ill. Corp. v. Comm'r of Internal Revenue*, 998 F.2d 513, 518 (7th Cir. 1993)). Neither is applicable here.

While the Court applied New Jersey law in its summary judgment order on the basis that "[t]he Agreement contained a New Jersey choice-of-law provision," *Delville*, 920 F. Supp. 2d at 467 & n.17, it did not conduct (and the parties did not brief) a choice-of-law analysis because, for purposes of liability, it made no difference: the legal standard was the same under New York and New Jersey law. There was therefore no "ruling" on the issue to which to now adhere. Moreover, even if the Court "held" that New Jersey law governs, that holding mistakenly relied

upon the 2000 Agreement, which contains a choice-of-law provision, rather than the applicable 2007 Agreement, which does not. There are therefore "cogent and compelling reasons" to decline to adhere to the earlier ruling and to conduct a proper choice-of-law analysis.

Similarly, the fact that Delville cited New Jersey law and represented that his claim arose under New Jersey law is not, in and of itself, a "legal position" to which he is now bound. Again, on the issue of liability, it did not matter whether New Jersey or New York law applied.[8] Because the parties never disputed the issue, it cannot be said that either one "prevailed." Nor is there any concern that Delville is attempting to game the system by benefitting from the application of New Jersey law in one instance and New York law in the next. The fact that both parties, as well as the Court, were non-committal as to which law governs indicates that there was never a settled legal position on the issue. Accordingly, the Court declines to apply judicial estoppel and, consistent with New York choice-of-law rules, holds that New York law governs the issue of prejudgment interest.

Having determined that New York law applies, the Court must calculate prejudgment interest at the statutory rate of 9% per year. Prejudgment interest began to accrue when Firmenich breached the ICP, *McNally Wellman Co. v. N.Y.S. Elec. & Gas Corp.*, 63 F.3d 1188, 1200 (2d Cir. 1995) (quotations omitted), and continued to run through the date of final judgment, N.Y. C.P.L.R. §§ 5001, 5002. Because the verdict compensated Delville for items adopted during the final quarter of Firmenich's fiscal year 2007 (between April 1 and June 30,

---

[8] Indeed, both parties at least once described Delville's breach of contract claim as arising under New York law. (*See* Dkt. No. 1 ¶ 2 (complaint describing Delville's breach of contract claim as arising under New York law); Dkt. No. 71 § II(A) (same); Dkt. No. 50 at 25 (reliance by Firmenich upon New York law in opposing Delville's summary judgment claim on his breach of contract claim).) As Delville notes, the source of confusion appears to be the fact that his claim for breach of the CAP Plan (which he eventually withdrew) arose under New Jersey law, while his claim for breach of the ICP arose under New York law.

2007) and the ICP required quarterly payment of bonuses, Firmenich should have paid Delville during the quarter after the items were adopted, *i.e.*, the first quarter of the fiscal year 2008, which ran from July 1 to September 30, 2007.  (Clark Decl., Exs. F-G.)  Consequently, the breach occurred on October 1, 2007.  Final judgment was entered on November 26, 2013.  Therefore, prejudgment interest is calculated from October 1, 2007 through November 26, 2013.  At 9% yearly uncompounded interest, the total prejudgment interest is $54,631.55.  (Clark Decl., Ex. J.)

**IV.  Conclusion**

For the foregoing reasons, it is hereby ORDERED that:

Delville's motion to alter the judgment is GRANTED;

Firmenich's motion to vacate the judgment is DENIED; and

The Clerk of Court is directed to amend the Judgment of November 26, 2013 (Dkt. No. 122) to add prejudgment interest in the amount of $54,631.55, and to close the motions at docket numbers 129 and 140.

SO ORDERED.


Dated: New York, New York
       June 3, 2014

_____
J. PAUL OETKEN
United States District Judge